IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JACOB WHITE,<br>    Plaintiff, | §<br>§<br>§ | |
| VS. | §<br>§ | CIVIL NO. 4:23-CV-925-P |
| THE STATE OF TEXAS, et al.,<br>    Defendants. | §<br>§<br>§ | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION REGARDING
DEFENDANTS' MOTIONS TO DISMISS**

Pending before the Court is Defendants the City of Grapevine, Texas ("Grapevine"), Bruno Rumbelow, Jennifer Hibbs, Chris Smith, Leigh Kapsos, Chad Hetterley, Grace Burckhard, Kevin Manning, Mike Hamlin, William Tate, Paul Slechta, Sharron Rogers, Leon Leal, Darlene Freed, Chris Coy, Duff O'Dell, and Matthew Boyle (collectively the "Grapevine Defendants")'s Rule 12(b)(6) Motion to Dismiss [doc. 38] and T.R.C.P. 101.106[1] Motion to Dismiss [doc. 41] (the "Grapevine Motions").[2] Also before the Court is Defendant the State of Texas ("Texas")'s Motion to Dismiss for lack of subject matter jurisdiction [doc. 46] ("Texas Motion"). For the reasons stated herein, the undersigned recommends that the: (1) Grapevine Defendants' 101.106 Motion to Dismiss [doc. 41] be **GRANTED**; (2) Grapevine Defendants' Rule 12(b)(6) Motion to Dismiss [doc. 38] be **GRANTED IN PART**; (3) District Court decline to exercise supplemental jurisdiction over the lone remaining state law claim (Count 97) against Grapevine and that it be **DISMISSED WITHOUT PREJUDICE**; and (4) State of Texas' Motion to Dismiss [doc. 46] be **GRANTED**.

---

[1] Texas Civil and Practice and Remedies Code Section 101.106.

[2] "Individual Defendants" collectively refers to Bruno Rumbelow, Jennifer Hibbs, Chris Smith, Leigh Kapsos, Chad Hetterley, Grace Burckhard, Kevin Manning, Mike Hamlin, William Tate, Paul Slechta, Sharron Rogers, Leon Leal, Darlene Freed, Chris Coy, Duff O'Dell, and Matthew Boyle.

## I.    BACKGROUND

*Pro se* Plaintiff Jacob White ("White") filed a ninety-one (91) page complaint alleging one-hundred and eight (108) claims against Texas and the Grapevine Defendants [doc. 1]. In his complaint, White seeks the following declaratory relief: (1) the removal of all trespass warnings against Plaintiff; (2) the removal of a peace bond against him; (3) a declaration that peace bonds are unconstitutional; (4) a declaration that section 30.05 of the Texas Penal Code is unconstitutional; (5) a declaration that "the entire chapter 7 of the Texas Code of Criminal Procedure" is unconstitutional; (6) a declaration that the Grapevine City Attorney abused the legal process; (7) an injunction against the Grapevine Defendants ordering them not to violate his rights in the future; and (8) an injunction against Texas ordering it not to violate his rights in the future. (Complaint at 62-5). White also seeks almost twenty million dollars in damages. (*Id.*)

## II.    LEGAL STANDARD

### A.  <u>Rule 12(b)(6)</u>

Rule 12(b)(6) authorizes the dismissal of a complaint that fails "to state a claim upon which relief can be granted." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). This rule must be interpreted in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief in federal court. *See Twombly*, 550 U.S. at 545. Rule 8(a) calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Swierkiewicz v. Sorema NA.*, 534 U.S. 506, 513 (2002) (holding that Rule 8(a)'s simplified pleading standard applies to most civil actions). The Court must accept as true all well-pleaded, non-conclusory allegations in the complaint and liberally construe the complaint in favor of the plaintiff. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The plaintiff must, however, plead specific facts, not mere conclusory allegations,

to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). Indeed, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). The Court need not credit bare conclusory allegations or "a formulaic recitation of the elements of a cause of action." *Id.* Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Generally, a court ruling on a motion to dismiss may rely on only the complaint and its proper attachments. A court is permitted, however, to rely on documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). In addition, the Court may consider a "written document that is attached to a complaint as an exhibit" as well as "documents attached to a motion to dismiss that are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Tex. Health and Hum. Servs. Comm. v. U.S.*, 193 F. Supp. 3d 733, 738 (N.D. Tex. 2016) (citations are internal quotation marks omitted).

## B. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014) (quoting *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005)). With limited exceptions, the Eleventh Amendment proscribes private suits brought in federal court against a State, including its agencies or departments. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Immunity under the Eleventh Amendment deprives

3

the court of subject matter jurisdiction, and this may be challenged in a motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See, e.g., Ross v. Tex. Educ. Agency*, 409 F. App'x 765, 768 (5th Cir. 2011) (per curiam); *see also Pennhurst*, 465 U.S. at 98 ("[T]he principle of sovereign immunity is a constitutional limitation on the federal judicial power established in Art. III[.]"). The Court may dismiss for lack of subject matter jurisdiction on any one of the following: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts related to the subject matter jurisdiction issue. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981); *accord Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001).

A Rule 12(b)(1) motion that challenges the court's subject matter jurisdiction solely on the face of the complaint is a facial attack. *See Williamson*, 645 F.2d at 412. "A 'facial attack' on the complaint requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980); *see Williamson*, 645 F.2d at 412 (when Rule 12(b)(1) motion is facial attack, "the plaintiff is left with safeguards similar to those retained" on a Rule 12(b)(6)). Thus, if the plaintiff has sufficiently alleged jurisdiction, the court must deny the Rule 12(b)(1) motion. *See Patterson v. Rawlings*, 287 F. Supp. 3d 632, 637 (N.D. Tex. 2018).

### III.    THE GRAPEVINE DEFENDANTS' MOTIONS

#### A. <u>Section 1983 Claims Against the Individual Defendants in Their Official Capacities</u>

White sued the Individual Defendants in both their individual and official capacities. (Complaint at 2-4). In the Grapevine Motions, Defendants argue that White cannot sue both the

4

Individual Defendants in their individual capacities and Grapevine. (Grapevine Defendants'
12(b)(6) Motion ("Grapevine Mot.") at 3-4). In response, White states that "[a]ll defendants are
being sued in their individual capacity," and offers to update the complaint to remove the claims
against the Individual Defendants in their official capacities. (Plaintiff's Response to Grapevine
Motions ("Pl.'s Grapevine Resp.") at 3-4). Furthermore, the Court finds that the official capacity
claims should be dismissed for the reasons stated in the Grapevine Defendants' Motion.
Accordingly, the Court recommends that the section 1983 claims against the Individual Defendants
in their official capacities be **DISMISSED WITH PREJUDICE**.

### B. Section 1983 Claims Against the Individual Defendants in Their Individual Capacities

The Individual Defendants argue that qualified immunity bars White's section 1983 claims
against them in their individual capacities. (Grapevine Mot. at 4-5). In response, White argues
that the Individual Defendants have failed to show they can raise qualified immunity and that, even
if they have, he has overcome it. (Pl.'s Grapevine Resp. at 4-6).

Qualified immunity shields government officials performing discretionary functions of
their jobs. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). The doctrine of qualified immunity
protects government officials "from liability for civil damages insofar as their conduct does not
violate clearly established statutory or constitutional rights of which a reasonable person would
have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity balances two
important interests—the need to hold public officials accountable when they exercise power
irresponsibly and the need to shield officials from harassment, distraction, and liability when they
perform their duties reasonably. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The protection
of qualified immunity applies regardless of whether the government official's error is "a mistake

of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 236 (citing *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting) (quoting *Butz v. Economou*, 438 U.S. 478, 507 (1978), for the proposition that qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law")).

Once a defendant pleads a good-faith entitlement to qualified immunity, "the burden shifts to the plaintiff to rebut it." *See, e.g., Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007). Once the burden has shifted, "plaintiffs must plead the two prongs of a qualified immunity claim: First, that there has been a violation of a constitutional right, and second, that 'the right at issue was "clearly established" at the time of defendant's alleged misconduct.'" *Robinson v. Midland Cnty., Texas*, 80 F.4th 704, 711 (5th Cir. 2023) (quoting *Pearson*, 555 U.S. at 232). The Court has "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Robinson*, 80 F.4th at 711.

A clearly established right is one that is "'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11–12 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks and alteration omitted)). "'We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Mullenix*, 577 U.S. at 11–12 (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)). Put simply, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Additionally, qualified immunity does not apply only when the official had "fair notice"—"in light of the specific context of the case, not as a broad general proposition"— that his particular conduct was unlawful. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (*per curiam*) (quotation omitted).

6

First, White argues that the Individual Defendants cannot raise the defense of qualified immunity because they failed to show that their actions were discretionary. (Pl.'s Grapevine Resp. at 4). As discussed above, once a defendant pleads a good-faith entitlement to qualified immunity, "the burden shifts to the plaintiff." *Hathaway*, 507 F.3d at 319. The Court finds that the Individual Defendants plead and, thus, have properly raised qualified immunity. Assuming, for argument's sake, that the Individual Defendants were required to do more to raise qualified immunity, they did so. The Court finds, and White raised no arguments to rebut, that all of the section 1983 claims against the Individual Defendants are for actions they allegedly took as city employees. (*See generally* Complaint). White does, however, argue that those actions were not discretionary. (Pl.'s Grapevine Resp. at 4-5 (stating that "[c]learly it is not a discretionary action to commit fraud, false imprisonment, violation of federal due process, etc.")). Merriam-Webster defines "discretionary" as an action "left to individual choice or judgment." *Discretionary*, The Merriam-Webster Dictionary (Revised ed. 2022). Thus, a discretionary action is any action in which the actor has a choice regarding if or how to carry it out. For example, a Parks/Rec director has the discretion to issue a trespass warning because he can choose to issue the warning and he can choose not to issue the warning.[3] While it is possible that a court could subsequently find that the issuance of a trespass warning was improper, it was still a discretionary action. Accordingly, the Court finds that the Individual Defendants have properly raised qualified immunity.

---

[3] While White now argues that the actions were not discretionary, his complaint provides otherwise. (*See, e.g.*, Complaint at 86 (stating "[t]he Parks/rec director was using his official power, and the Parks/rec Director *exercised a discretionary duty* to issue a trespass warning; *thus, he is entitled to raise qualified immunity*") (emphasis added) (mistakes in original)); *see also* Complaint at 85 stating that the library director's issuance of a trespass warning was a discretionary action).

7

Next, in his response, White asserts that, if qualified immunity was properly raised, "the rights violated were clearly established at the time. This means that qualified immunity has been overcome or defeated. The complaint has a Memorandum that explains this in more detail." (Pl.'s Grapevine Resp. at 6). The aforementioned qualified immunity section of the Memorandum contains the legal standard for raising and overcoming qualified immunity, but it does not contain any allegations that would aid the Court in determining what clearly established right the Defendants allegedly violated. (*See* Complaint at 77). Construing White's complaint and response as liberally as possible, it appears that White conflates fundamental rights with clearly established rights. (*See* Complaint at 87 (stating "[the] trespass warning violated Plaintiffs fundamental right of free speech, right of locomotion, fundamental right of freedom of association, and equal protection with no valid reason. These rights were all established at the time the Parks/Rec director issued the trespass warning."); *see also* Pl.'s Grapevine Resp. at 7 (stating "as explained above their acts violate federal and state civil rights well known at the time.")).

For example, in his response, White points to Count 1 of his complaint for "Violation of Constitutional Procedural Due Process Rights for Library Trespass Warning." (Pl.'s Grapevine Resp. at 5). Count 1 provides: "[o]n Nov 16th, 2022 Officer Manning violated Plaintiffs procedural due process rights by serving the library trespass warning over the phone without giving an appeal process or time and place for a hearing. He is liable in his official and individual capacity." (Complaint at 11-12) (mistakes in original). The complaint states that White was issued a trespass warning over the phone. White was not charged with criminal trespass; he was given notice as required by Texas Penal Code section 30.05, which provides that "[a] person commits an offense if the person enters or remains on or in the property of another . . . and the person: (1) had notice that the entry was forbidden." *Id.* As relevant here, the statute defines notice as an "oral

8

or written communication by the owner or someone with apparent authority to act for the owner."
*Id.* Thus, White fails to explain how a reasonable official would have understood that the issuance
of an oral trespass warning, in compliance with the law, violated a clearly established right. *See
Mullenix*, 577 U.S. at 11–12. The fact that a law exists does not mean that an allegedly violated
right is clearly established. Rather, clearly established requires that White provide "precedent
[that] place[s] the statutory or constitutional question beyond debate." *Mullenix*, 577 U.S. at 11–
12. Because White has provided the Court with no precedent—other than his conclusory assertion
that "the rights violated were clearly established at the time"—the Court finds that White has failed
to properly allege that the Individual Defendants violated a clearly established right.

      In a last-ditch effort to save his section 1983 claims, White argues that "[d]eclaratory and
injunctive relief is sought and qualified immunity is not a defense." (Pl.'s Grapevine Resp. at 6).
While White is correct that qualified immunity does not apply when declaratory and injunctive
relief is sought, *see Pearson*, 555 U.S. at 242, his argument falls flat because section 1983 does
not permit injunctive relief against state officials sued in their ***individual capacities***. *See Grady v.
El Paso Cmty. Coll.*, 979 F.2d 1111, 1113 (5th Cir. 1992) (finding no individual capacity claim
for reinstatement under 38 U.S.C. § 2201); *see also Scott v. Flowers*, 910 F.2d 201, 213 (5th Cir.
1990) (noting that "the injunctive relief sought [expungement of portion of written reprimand] and
won by [the plaintiff] can be obtained from the defendants only in their official capacity as
commissioners"); *Frank v. Relin*, 1 F.3d 1317, 1327 (2d Cir. 1993) ("[S]uch equitable relief
[reinstatement] could be obtained against Relin only in his official, not his individual, capacity;
and a defense of qualified immunity may properly be raised only with respect to claims asserted
against a defendant in his individual capacity."); *Hill v. Shelander*, 924 F.2d 1370, 1374 (7th Cir.
1991) ("As injunctive relief against a state official may be recovered only in an official capacity

suit."); *Feit v. Ward*, 886 F.2d 848, 858 (7th Cir. 1989) ("[T]he equitable relief Feit requests—a declaration that the policy is unconstitutional and an injunction barring the defendants from implementing the policy in the future—can be obtained only from the defendants in their official capacities, not as private individuals."); *Garza v. Escobar*, No. 7:18-CV-249, 2019 WL 12267384, at *2 (S.D. Tex. July 1, 2019). Therefore, the Court finds that the equitable relief exception to qualified immunity does not apply here.

Based on the foregoing, the Court finds and concludes that the Individual Defendants have properly raised the defense of qualified immunity and that White has failed to overcome it. Accordingly, the Court recommends that all section 1983 claims against the Individual Defendants in their individual capacities be **DISMISSED WITH PREJUDICE**.

### C.  Section 1983 Claims Against the City of Grapevine

"'Under the decisions of the Supreme Court and [the Fifth Circuit], municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom.'" *Self v. Mansfield*, 369 F. Supp. 3d 684, 700 (N.D. Tex. 2019) (quoting *Piotrowski v. Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't of Social Services of City of N.Y.*, 436 U.S. 658, 694 (1978))). A plaintiff seeking to impose liability upon a municipality must establish all three elements. *Self*, 369 F. Supp. 3d at 700. A municipality may be liable under section 1983 only if the execution of one of its customs or policies deprives a plaintiff of his constitutional rights. *Monell*, 436 U.S. at 691. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Although an official policy which is itself unconstitutional clearly subjects a municipality to section 1983 liability, "even a facially

innocuous policy will support liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." *Piotrowski*, 237 F.3d at 579 (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Ok. v. Brown*, 520 U.S. 397, 407 (1997)). A city cannot be liable under section 1983, however, merely because it employed a tortfeasor. *See Monell*, 436 U.S. at 691; *see also Bryan Cnty.*, 520 U.S. at 403. Rather, "[t]he 'official policy' requirement . . . make[s] [it] clear that municipality liability [under section 1983] is limited to action for which the municipality is actually responsible . . .—that is, acts which the municipality has officially sanctioned or ordered." *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986). The policy or custom must be "the moving force of the constitutional violation." *Monell*, 436 U.S. at 694.

     In this case, White alleges that:

> The claims brought in this complaint have been brought to the attention of the Mayor and City Council before the complaint was filed. The Mayor and City Council then ratified the decisions. Thus, we see that the policy makers were involved and that the municipality is liable . . . We see there was a city policy (ratified by policy makers), there was a violation of many civil rights, and the cause of these violations was due to the policy makers from the city.

(Pl.'s Grapevine Resp. at 7) (mistakes in original). Further, White asserts that the city policy led to the "violation of procedural due process, violation of substantive due process, violation of free speech, violation of right of locomotion, violation of freedom of association, equal protection violation, etc." (Pl.'s Grapevine Resp. at 6) (mistakes in original). White, however, fails to specify what the city policy is or was. After thoroughly reviewing White's response and complaint, it is clear that White emailed virtually every employee of the city of Grapevine to make them aware of his disagreement with the trespass warning and to ask that it be removed. (*See, e.g.,* Complaint at 8, 9 (stating "[White] began to email everyone in the city who could help. [White] emailed the

city council, chief of police, City Manager, Assistant City Manager, and even the Library Director and Parks/Rec Director"), 12, 13).  White argues that the Mayor and City Council "ratified the decisions" because they "were requested to remove the library trespass warning or provide due process and failed to act," through the ratification of a new city ordinance.  (Complaint at 22, 83).  Construing these allegations as liberally as possible, the Court finds that White is attempting to assert that it was Grapevine's city policy to usurp his rights by issuing trespass warnings without the opportunity for a hearing.

White's allegations fail to allege "even a facially innocuous policy [that] was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." *Piotrowski*, 237 F.3d at 579 (internal citations omitted).  As discussed above, White complains that he was issued trespass warnings without a hearing and, thus, in violation of his rights.  A trespass warning is a predicate to the issuance of a charge of criminal trespass under section 30.05, and can be given by the owner of the property or anyone acting on their behalf, such as an attorney, police officer, neighbor, or employee.  *See* Texas Penal Code § 30.05.  While only one warning is required for a party to subsequently seek a charge of criminal trespass, there is no limit to the number of warnings that can be issued.  *Id.*  Because White has not pled that he has been prosecuted for criminal trespass under section 30.05, only that he has been given trespass warnings, no hearing was required, and, thus, he cannot show that the policy was promulgated with a deliberate indifference that a constitutional violation would result.  *See Smith v. Machorro*, No. 3-07-cv-1547-BD, 2008 WL 656500, at *4 (N.D. Tex. Mar. 12, 2008) (finding that the plaintiffs were never placed under arrest when they were issued a criminal trespass warning, thus due process is not triggered); *see also Shaikh v. Allen City Council*, No. 4:21-CV-953-ALM-KPJ, 2023 WL 2518908, at *10 (E.D. Tex. Feb. 8, 2023), rep. and recommendation adopted, No. 4:21-

12

CV-953-ALM-KPJ, 2023 WL 2503542 (E.D. Tex. Mar. 13, 2023) (citing *Bhombal v. Irving Indep. Sch. Dist.*, No. 3:17-cv-2583, 2018 WL 2127760, at *3 (N.D. Tex. May 9, 2018)). Had White been prosecuted for criminal trespass and pled that Grapevine had an official policy of violating due process through the prosecution of offenders—not just White himself—for criminal trespass without a hearing, his claims possibly could have survived. However, based on White's pleadings, that is not the case here. Therefore, the Court finds and concludes that White has failed to properly allege a policy or custom that was the moving force behind any alleged constitutional violations. Accordingly, the Court recommends that the section 1983 claims against the City of Grapevine be **DISMISSED WITH PREJUDICE**.

### D. <u>State Tort Claims Against the Grapevine Defendants</u>

#### 1. State Tort Claims Against the Individual Defendants

Courts have long recognized that "no State can be sued in her own courts without her consent, and then only in the manner indicated by that consent." *Hosner v. DeYoung*, 1 Tex. 764, 769 (1847). Because the Legislature is better suited to balance the conflicting policy issues associated with waiving immunity, we look to pertinent legislative enactments to determine the extent to which immunity has been voluntarily relinquished. *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 695 (Tex. 2003). Courts interpret statutory waivers of immunity narrowly, as the Legislature's intent to waive immunity must be clear and unambiguous. *See, e.g., Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008) (citing Tex. Gov't Code § 311.034). The Texas Tort Claims Act ("TTCA") provides a limited waiver of immunity for certain suits against governmental entities and caps recoverable damages. *See* Tex. Civ. Prac.

& Rem. Code § 101.023.[4] After the TTCA was enacted, plaintiffs often sought to avoid the Act's damages cap or other strictures by suing governmental employees, since claims against them were not always subject to the Act. *See* Michael S. Hull et al., *House Bill 4 and Proposition 12: An Analysis with Legislative History, Part Three: Detailed Analysis of the Medical Liability Reforms*, 36 Tex. Tech L. Rev. 169, 290–93 (2005). To prevent such circumvention, and to protect governmental employees, the Legislature created an election-of-remedies provision. As originally enacted, section 101.106, entitled "Employees Not Liable After Settlement or Judgment," provided:

> A judgment in an action or a settlement of a claim under this chapter bars any action involving the same subject matter by the claimant against the employee of the governmental unit whose act or omission gave rise to the claim.

Act of May 17, 1985, 69th Leg., R. S., ch. 959, § 1, 1985 Tex. Gen. Laws 3242, 3305 (current version at Tex. Civ. Prac. & Rem. Code § 101.106). Under the TTCA's election scheme, recovery against an individual employee is barred and may not be sought when a suit is filed against the city and an employee or when the employee is sued for conduct within the scope of his or her employment. Tex. Civ. Prac. & Rem. Code §§ 101.106(e)(f).

In this case, White argues that the TTCA should not apply to the Individual Defendants because "[c]learly plaintiff brings state claims against individuals for intentional torts not the city. If you read the causes of action you will see the individuals are named." (Pl.'s Grapevine Resp. at 7) (mistakes in original). However, a review of those alleged causes of action shows that the factual basis for such claims against Grapevine and the Individual Defendants are one and the

---

[4] While White fails to cite any statute under which he brings his tort claims, when a plaintiff brings tort claims against a government unit or its employees such claims are presumed to be pursuant to the TTCA. *See, e.g., Mission*, 253 S.W.3d 659.

same. (*See, e.g.*, Complaint at 27 (Count 35 stating "[t]he [c]onduct from the City of Grapevine and its employees was intentional, extreme, illegal and cause plaintiff enough fear and distress he broke his apartment lease and moved out of the city and the County") (mistakes in original). Even if White had not sued both Grapevine and its employees, his claims would still fall under the TTCA because all of the claims against the Individual Defendants, as discussed above, are for actions taken as part of their official duties. (*See, e.g.*, Complaint at 54 (Count 93 stating "[a]t the hearing for the peace bond, The City Attorney said if Plaintiff did not agree to the terms the City may try to press criminal charges against Plaintiff"). Therefore, the Court finds and concludes that White's state tort claims fall within the TTCA's election of remedies section.

Under the TTCA's election of remedies section, "[i]f suit is filed . . . against both a government unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." Tex. Civ. Prac. & Rem. Code § 101.106(e). Because Grapevine filed such a motion, the Court recommends that Grapevine's 101.106 Motion to Dismiss should be **GRANTED** and that the state law claims against the Individual Defendants be **DISMISSED WITH PREJUDICE**.

### 2. State Tort Claims Against the City of Grapevine

The TTCA provides a limited waiver of immunity for certain suits against governmental entities and caps recoverable damages. *See* Tex. Civ. Prac. & Rem. Code § 101.023; *see also Mission.*, 253 S.W. 3d at 655. The TTCA's limited waiver of governmental immunity for certain tort claims expressly does not apply to claims "arising out of assault, battery, false imprisonment, *or any other intentional tort*." Tex. Civ. Prac. & Rem. Code Ann. § 101.057(2) (emphasis added); *see also Melton v. Waxahachie Police Dep't*, No. 3:21-CV-2854-K-BH, 2022 WL 3636616, at *14 (N.D. Tex. Aug. 8, 2022), rep. and recommendation adopted, No. 3:21-CV-2854-K, 2022 WL

15

3639506 (N.D. Tex. Aug. 23, 2022), *aff'd*, No. 22-10897, 2023 WL 3051898 (5th Cir. 2023)

(citing *Swiat v. Fort Worth*, No. 4:10-CV-354-A, 2011 WL 2559637, at *5 (N.D. Tex. June 28,

2011) (considering the scope of § 101.057(2)); *Humphreys v. Ganado*, 467 F. App'x 252, 256–57

(5th Cir. 2012) (identifying malicious prosecution as an intentional tort); *T.R. Hoover Cmty. Dev.*

*Corp. v. City of Dallas*, No. 3:06-CV-2148-O, 2009 WL 256000, at *2 (N.D. Tex. Feb. 3, 2009)

(identifying tortious interference as an intentional tort); *Jimenez v. Conley Mag.*, LLC, No. SA-

06-CA-1013-XR, 2006 WL 3716649, at *2 (W.D. Tex. Dec. 14, 2006) (recognizing that invasion

of privacy is an intentional tort); *Jackson v. Sheriff of Ellis Cty.*, 154 F. Supp. 2d 917, 921 (N.D.

Tex. 2001) (stating that intentional infliction of emotional distress is an intentional tort).

   In this case, all of the state tort claims alleged by White are intentional torts,[5] a fact not

disputed by White.  (*See generally* Complaint; *see also* Pl.'s Grapevine Resp. at 7 ("[c]learly

plaintiff brings state claims . . . for intentional torts").  Therefore, the Court finds and concludes

that Grapevine has immunity under the TTCA from all of the state tort claims alleged by White.

Accordingly, the Court recommends that the state law claims against Grapevine be **DISMISSED**

**WITH PREJUDICE**.

### E.  Texas Constitutional Claims

   The Grapevine Defendants argue that White's Texas Constitutional claims should be

dismissed because "[t]here is no private cause of action for damages for alleged violations of the

Texas Constitution." (Grapevine Mot. at 7-8); *see, e.g.*, *White v. Arlington*, No. 4:22-CV-00886-

O, 2023 WL 4188048, at *4 n. 12 (N.D. Tex. June 26, 2023) (citing *Elsa v. M.A.L.*, 226 S.W.3d

390, 392 (Tex. 2007) (citing *Beaumont v. Bouillon*, 896 S.W.2d 143 (Tex. 1995))).  However,

---

[5] White alleges false imprisonment, defamation, fraud, intentional infliction of emotional distress, civil conspiracy, and abuse of process. (*See* Complaint at Counts 20-37, 56-72, 92-6, 98-100, 102, and 108).

16

White, citing *Jones v. Memorial Hosp. Sys.*, argues that this assertion is incorrect. 746 S.W.2d
891 (Tex. App.—Houston [1st Dist.] 1988, no writ) (finding equitable causes of action for
violations of the Texas Constitution's equivalent of the Federal First Amendment). While it is
well settled that there is no cause of action for damages for a violation of the Texas constitution,
White may, in fact, seek equitable relief for such violations. *See M.A.L.*, 226 S.W.3d at 392 (citing
*Bouillion*, 896 S.W.2d 143).

As discussed above, injunctive relief cannot be sought against city officials in their
individual capacities. *See, e.g., Garza*, 2019 WL 12267384, at *2 (S.D. Tex. July 1, 2019).
Because, in his response, White states that he is only suing the Individual Defendants in their
individual capacities, he cannot seek injunctive relief against them for alleged violations of the
Texas Constitution. (See Pl.'s Grapevine Resp. at 3). Therefore, the claims against the Individual
Defendants for Texas Constitutional violations should be dismissed and the Court need only
analyze whether White's claims for equitable relief against Grapevine survive.

In order for the Court to determine whether White's claims for equitable relief relating to
alleged violations of the Texas Constitution can survive, the Court must first determine what
specific claims are brought. After reviewing the complaint, all discernable claims for "Texas
Constitution Violation" are listed as follows:

- **Counts 20-29:** "IIED: TEXAS CONSTITUTION VIOLATION;"

- **Counts 56-65:** "IIED: TEXAS CONSTITUTION VIOLATION;"

- **Count 94:** "TEXAS CONSTITUTION VIOLATION: TEXAS PEACE BOND
  – RETALIATION FOR PUBLIC RECORDS REQUESTS INTENTIONAL
  INFLECTION [sic] OF EMOTIONAL/MENTAL DISTRESS;"

- **Count 95:** "TEXAS CONSTITUTION VIOLATION: TEXAS PEACE BOND
  – RETALIATION FOR REDRESS OF GRIEVANCE INTENTIONAL

17

INFLECTION [sic] OF EMOTIONAL/MENTAL DISTRESS;"

- **Count 96:** "TEXAS CONSTITUTION VIOLATION: TEXAS PEACE BOND – RETALIATION FOR RIGHT TO SUE INTENTIONAL INFLECTION [sic] OF EMOTIONAL/MENTAL DISTRESS;" and

- **Count 97:** "TEXAS CONSTITUTION VIOLATION: EQUAL PROTECTION VIOLATION."

(*See generally* Complaint).  A review of these causes of action reveals that while there are twenty-four (24) counts related to alleged violations of the Texas Constitution, twenty-three (23) of them (Counts 20-29, 56-65, 94-96) are for intentional infliction of emotional distress resulting from the alleged violations.  As discussed above, Grapevine is immune from suit, under the TTCA, for intentional torts, and Counts 20-29, 56-65, and 94-96 should be dismissed.  *See, e.g., Jackson*, 154 F. Supp. 2d at 921 (stating that intentional infliction of emotional distress is an intentional tort).  Thus, the Court finds that the only remaining claim raised by White for alleged violations of the Texas Constitution against Grapevine is Count 97.  (Complaint at 55).

Article 1, section 3a of the Texas Constitution states that all men "have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services."  *Id.*  While it appears that White may be able to seek equitable relief against Grapevine for violations of the Equal Protection Clause of the Texas Constitution, the Court Recommends that the District Court decline to exercise supplemental jurisdiction over the state law question.  As discussed above and below, all of White's other claims against all Defendants should be dismissed.  Thus, the only remaining claim is a matter of state law—this alleged violation of the Texas Constitution (Count 97).  Because "[d]istrict courts enjoy wide discretion in determining whether to retain supplemental jurisdiction over a state claim once all federal claims are dismissed." *Alexander v. Miss.*, 655 F. App'x 989, 993 (5th Cir. 2016) (citing

*Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993)); *see Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009) ("The general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial."). Accordingly, the Court recommends that the District Court decline to exercise supplemental jurisdiction and that this claim against Grapevine be **DISMISSED WITHOUT PREJUDICE.**

### F. Respondeat Superior, Negligent Hiring, Supervision and Training, and Municipality Indemnification

Grapevine argues that White failed to plead and cannot assert his claims against them for *respondeat superior*, negligent hiring, supervision and training, and municipality indemnification. (Grapevine Mot. at 8-9). While White addresses every other argument presented by Grapevine, he does not address these. (*See generally* Pl.'s Grapevine Resp.). Having reviewed Grapevine's arguments and the applicable law, the Court finds and concludes that White cannot bring these claims against Grapevine for the reasons stated in its Motion. Accordingly, the Court recommends that the above-referenced claims against Grapevine be **DISMISSED WITH PREJUCICE.**

### G. Punitive Damages

Finally, the Grapevine Defendants assert that White's punitive damages claims against them should be dismissed because they are immune from such claims. (Grapevine Mot. at 9). In response, White argues that he can recover punitive damages against the Individual Defendants. (Pl.'s Grapevine Resp. at 9). Because the Court finds, concludes, and recommends that all of White's claims against the Grapevine Defendants be dismissed; the Court need not address this issue as punitive damages are not an independent cause of action and are only available when a plaintiff establishes actual damages. *Hancock v. Variyam*, 400 S.W.3d 59, 71 (Tex. 2013).

**H. Conclusion**

Based on the foregoing, the Court recommends that the: (1) Grapevine Defendants'
T.R.C.P 101.106 Motion to Dismiss [doc. 41] be **GRANTED**; (2) Grapevine Defendants' Rule
12(b)(6) Motion to Dismiss [doc. 38] be **GRANTED IN PART**; and (3) District Court decline to
exercise supplemental jurisdiction over the remaining state law claim (Count 97) against
Grapevine and that it be **DISMISSED WITHOUT PREJUDICE**.

## IV.    THE STATE OF TEXAS' MOTION

After a comprehensive review of White's ninety-two-page complaint full of repetitive and
conclusory statements, the Court found seven (7) references which, liberally construed, could be
viewed as claims for relief against the State of Texas.[6]  Those references are as follows:

(1) Plaintiff has been admitted to a PhD Program . . . even with the official oppression
of the employees of [Grapevine] and State of Texas.  (Complaint at 6) (mistakes in
original).

(2) The State of Texas has ruled that Plaintiff has no right of appeal, no right to a Jury.
The case law from the State of Texas has ruled writ of habeas corpus is the ONLY
remedy.  (Complaint at 11) (mistakes in original) (emphasis in original).

(3) Plaintiff asks this court to . . . discourage further harassment from [Grapevine] and
State of Texas.  (Complaint at 11) (mistakes in original).

(4) The State of Texas deprived Plaintiff of $2500, which need to be returned.
(Complaint at 61) (mistakes in original).

(5) Plaintiff request that the court rule that Section 30.05 Texas Penal Code as
unconstitutional, and asks for declaratory and injunctive relief against the State of
Texas. (Complaint at 62) (mistakes in original).

---

[6] The list does not include the listing of Texas as a defendant or references to things filed in the state.  The
Court also notes that on page fifty of the complaint, White mentions "the state" in an allegation related to the issuance
of the peace bond because of his requests for public records.  A thorough review of the complaint shows that "the
state" almost certainly incorrectly refers to Grapevine.  (*See, e.g.,* Complaint at 55 (stating "[o]ther people . . . did not
have the city file a peace bond application against them [for public records requests]")).

(6) Plaintiff request that the court rule that the entire Chapter 7 of the Texas Code of Criminal Procedure as unconstitutional, and asks for declaratory and injunctive relief against the State of Texas. (Complaint at 62) (mistakes in original).

(7) Plaintiff asks for injunctive relief/declaratory relief asking for a court order issued against the State of Texas not to violate due process against Plaintiff in the Future. (Complaint at 65) (mistakes in original).

In his response, White states that he "is not seeking any monetary damages from the State of Texas. Plaintiff is only suing Texas to enforce federal/state constitutional rights." (Plaintiff's Response to State's Motion to Dismiss ("Pl.'s Tex. Resp.") at 3). The Court finds and concludes that White's statement is consistent with the fact that the only references to Texas in the complaint are conclusory and woefully insufficient to state a claim against Texas. The Court further finds and concludes—consistent with White's statement and complaint—that he only seeks declaratory and injunctive relief against Texas. Therefore, the only analysis required is whether the Court has jurisdiction to issue such relief against Texas.

When presented with a motion to dismiss under Rule 12(b)(1), the federal courts begin with the proposition that they "are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Thus, when determining whether subject matter jurisdiction exists, a court "must presume [both] that a suit lies outside this limited jurisdiction, and [that] the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). It is well settled that state and federal "court jurisdiction is limited by the Eleventh Amendment and the principles of sovereign immunity that it embodies," and that the "ultimate guarantee of the Eleventh Amendment" is that a non-consenting State may not be sued in federal

21

court by private individuals, ***including its own citizens***. *See Bd. of Trs. of the Univ. of Al. v. Garrett*, 531 U.S. 356, 363 (2001); *see also Vogt v. Bd. Of Comm'rs of Orleans Levee Dist.*, 294 F.3d 684, 688 (5th Cir. 2002); *Alden v. Maine*, 527 U.S. 706, 748 (1999). Unless a state has waived its immunity, the Eleventh Amendment bars the state's citizens from filing suit against the state in federal court for either monetary damages or injunctive relief. *See, e.g., Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2018). The Eleventh Amendment generally bars federal courts from issuing injunctive relief against States, "for one can hardly imagine 'a greater intrusion on state sovereignty.'" *Planned Parenthood Gulf Coast, Inc. v. Phillips*, 24 F.4th 442, 450 (5th Cir. 2022) (citing *Pennhurst*, 465 U.S. at 106).

In this case, as discussed above, White seeks declaratory and injunctive relief against the State of Texas. While there are a few exceptions to sovereign immunity allowing citizens to bring suits against state officials, "a State cannot be sued directly in its own name regardless of the relief sought." *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985) (citing *Alabama v. Pugh*, 438 U.S. 781 (1978) (*per curiam*)). Therefore, the Court finds that White's suit against Texas for equitable relief cannot proceed under the limited exception to sovereign immunity recognized in *Ex Parte Young*.[7] *See Graham*, 473 U.S. at 167 n.14; *Pennhurst*, 465 U.S. at 101–02; *see also Ex parte Young*, 209 U.S. 123 (1908). Accordingly, because the relief White seeks against Texas is barred by the Eleventh Amendment, the Court finds that it lacks subject matter jurisdiction and

---

[7] White asserts that Texas' immunity under the eleventh amendment has been thrice waived. (See Pl.'s Tex. Resp. at 4-6 (arguing that Congress waived it by ratifying the Fourteenth Amendment, Texas Waived it by ratifying the Fourteenth Amendment, and the Texas Bill of Rights waived it)). While Texas thoroughly rebutted each of these assertions, the Court need not address them because they are not relevant to whether Texas can be sued in name. *See, e.g., Graham*, 473 U.S. at 167 n. 14.

recommends that Texas' Motion be **GRANTED** and that all the claims and relief sought against it be **DISMISSED WITH PREJUDICE**.

## RECOMMENDATION

For the reasons set out above, the Court **RECOMMENDS** that the: (1) Grapevine Defendants' 101.106 Motion to Dismiss [doc. 41] be **GRANTED**; (2) Grapevine Defendants' Rule 12(b)(6) Motion to Dismiss [doc. 38] be **GRANTED IN PART**; (3) District Court decline to exercise supplemental jurisdiction over the remaining state law claim (Count 97) against Grapevine and that it be **DISMISSED WITHOUT PREJUDICE**; and (4) State of Texas' Motion to Dismiss [doc. 46] be **GRANTED**.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending time to file objections to 14 days).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **November 8, 2023,** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation.  It is further **ORDERED** that if objections are filed, and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusion, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED October 25, 2023.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE