UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**JACOB WHITE,**

   Plaintiff,

v.                          No. 4:23-cv-00925-P

**THE STATE OF TEXAS, ET AL.,**

   Defendants.

## ORDER ACCEPTING THE FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

The United States Magistrate Judge entered findings, conclusions, and a recommendation for this case on October 25, 2023. *See* ECF No. 61. Plaintiff Jacob White filed objections to the FCR on October 31. *See* ECF No. 63. The Court thus conducted a *de novo* review of the FCR and related briefing. Having done so, the Court **ADOPTS** the reasoning of the magistrate judge, **ACCEPTS** the FCR as the findings and conclusions of the Court, and **ORDERS** as follows:

The Grapevine Defendants' Motion to Dismiss Pursuant to Texas Civil Practice and Remedies Code § 101.106 (ECF No. 41) is **GRANTED**.

The Grapevine Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 38) is **GRANTED in part**.

Texas's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) is **GRANTED in part**, with the Court declining to exercise supplemental jurisdiction over the sole remaining claim against the State (Count 97 of the Complaint).

## BACKGROUND

On September 7, 2023, Jacob White filed a ninety-one-page Complaint asserting 108 different claims against the State of Texas, the City of Grapevine, and a small army of individual defendants. By Order

dated October 10, 2023, the Court adopted an earlier FCR and dismissed White's claims against Defendant Brandt, a state-court official White sued in his individual and official capacities. The Court now turns to the remaining defendants' motions to dismiss.

While the Complaint "paint[s] an incomplete and somewhat confusing picture" regarding what specifically White contends each defendant did, the Complaint's factual allegations are detailed extensively in previous FCRs and the Court's prior order of acceptance related to former-Defendant Brandt's motion to dismiss. The skinny of White's allegations is this: after a series of run-ins with public employees at a library/rec center in Grapevine, the City obtained a peace bond against White. White cries foul and asserts sweeping allegations of substantive and procedural impropriety vis-à-vis the peace bond hearing and its subsequent enforcement. As White sees things, a secretive cabal of municipal employees and state officials conspired to deprive him of his fundamental right of "locomotion" to and from the Grapevine library. When White protested, the relevant city employees—all of whom were allegedly in cahoots with the mayor, city attorney, and city council—conspired to silence him by posting trespass warnings and otherwise retaliating against him.

For their part, Defendants say they were simply reacting to White's badgering of municipal employees in a manner clearly authorized by law. The Court need not address Defendants' substantive arguments, however, because White's pleadings do not establish a single plausible cause of action for which this Court has jurisdiction. White's lawsuit alleges a staggering array of torts and civil-liberty violations, as well as a constitutional challenge against the Texas Penal Code's provisions regarding peace bonds. The Complaint is difficult to decipher at times, in large part because the allegations against individually-named defendants frequently overlap with allegations against the City of Grapevine and the State of Texas. As shown below, Texas's Motion provides an excellent bird's-eye synopsis of White's allegations:

1. **Claims 1–37**: all seemingly relate to a "Library Trespass Warning," and are further subdivided as follows:
   a. **Claims 1–17**:      42 U.S.C. § 1983. *Id.* at 11–18.
   b. **Claims 18–19**:     14th Amendment violation. *Id.* at 18–19.
   c. **Claims 20–29**:     Texas Constitutional Violation. *Id.* at 19–25.
   d. **Claims 30–35**:     Texas Tort / Common Law. *Id.* at 25–27.
   e. **Claims 36–37**:     Texas Tort. *Id.* at 27–28.

2. **Claims 38–72**: all seemingly relate to a "Rec Center Trespass Warning," and are further subdivided as follows:
   a. **Claims 38–53**:     42 U.S.C. § 1983. *Id.* at 28–35.
   b. **Claims 54–55**:     14th Amendment violation. *Id.* at 35–36.
   c. **Claims 56–65**:     Texas Constitutional Violation. *Id.* at 36–42.
   d. **Claims 66–72**:     Texas Tort / Common Law. *Id.* at 42–44.

3. **Claims 73–1000**: all seemingly relate to a "Texas Peace Bond," and are further subdivided as follows:
   a. **Claims 73–82**:     42 U.S.C. § 1983. *Id.* at 44–48.
   b. **Claims 83–90**:     14th Amendment violation. *Id.* at 49–52.
   c. **Claim 91**:         8th Amendment Violation. *Id.* at 52–53.
   d. **Claims 92–93**:     Texas Tort. *Id.* at 53–54.
   e. **Claim 94–97**:      Texas Constitutional Violation. *Id.* at 54–55.
   f. **Claims 98–100**:    Texas Tort. *Id.* at 56.

4. **Claims 101–102**: all seemingly relate to "Property Rights," and are further subdivided as follows:
   a. **Claim 101**:        42 U.S.C. § 1983. *Id.* at 57.
   b. **Claim 102**:        Texas Tort. *Id.*

5. **Claims 103–108**: are categorized as "Other Claims," and are further subdivided as follows:
   a. **Claim 103**:        42 U.S.C. § 1985. *Id.* at 58.
   b. **Claim 104**:        Respondeat Superior. *Id.*
   c. **Claim 105**:        Negligent Hiring, Supervision, and Training. *Id.* at 58–59.
   d. **Claim 106**:        42 U.S.C. § 1983. *Id.* at 59–60.
   e. **Claim 107**:        Indemnification. *Id.* at 60.
   f. **Claim 108**:        Common Law Fraud. *Id.* at 60–61.

*See* ECF No. 46 at 2.

As noted above, the Court dismissed White's claims against Defendant Brandt (who issued the peace bond) because you can't sue state judicial officials just because they make decisions you don't like. What remains of White's claims is a bizarre amalgam of allegations for which White seeks $20 million, along with the following requests for declaratory relief:

1. The removal of trespass warnings against him.
2. The removal of Grapevine's peace bond against him.
3. A declaratory finding that the peace bond was unconstitutional.
4. A declaratory finding that Tex. Penal Code Ann. § 30.05 is unconstitutional.

5. A declaratory finding that "the entire chapter 7 of the Texas Code of Criminal Procedure" is unconstitutional.
6. A declaratory finding that Grapevine's city attorney abused legal process.
7. An injunction against various defendants to keep them from violating White's civil rights in the future.
8. An injunction against the State of Texas to keep the State from violating White's civil rights in the future.

Given the large number of defendants in this action, the Court uses "Texas" to refer to the state, "Grapevine" to refer to the city as a municipality, and "Grapevine Defendants" to refer to the city in conjunction with the individual defendants, all of whom worked for or are otherwise connected to Grapevine's municipal government.[1]

## LEGAL STANDARDS

### A. Rule 12(b)(6)

The Court must dismiss a complaint if it doesn't "state a claim upon which relief can be granted." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). This makes sense: plaintiffs go to court to seek some form of relief; if the court can't provide the relief sought, the case must be dismissed. To state a viable claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). The Court accepts all non-conclusory allegations as true and views them in the light most favorable to the plaintiff. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008). This is especially true for *pro se* plaintiffs like White, as "pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981). Still, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

---

[1]These include Bruno Rumbelow, Jennifer Hibbs, Chris Smith, Leigh Kapsos, Chad Hetterley, Grace Burckhard, Kevin Manning, Mike Hamlin, William Tate, Paul Slechta, Sharron Rogers, Leon Leal, Darlene Freed, Chris Coy, Duff O'Dell, and Matthew Boyle. *See* ECF No. 61 at 1.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Generally, a court ruling on a motion to dismiss may rely on only the complaint and its proper attachments. A court is permitted, however, to rely on documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey*, 540 F.3d at 338 (citations and internal quotation marks omitted). "[R]egardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (cleaned up).

**B. Rule 12(b)(1)**

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014). With limited exceptions, the Eleventh Amendment proscribes private suits brought in federal court against a State, including its agencies or departments. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Eleventh Amendment immunity deprives the Court of subject-matter jurisdiction and may be raised via a Rule 12(b)(1) motion. *See id.* at 98 ("[T]he principle of sovereign immunity is a constitutional limitation on the federal judicial power established in Art. III."); *see generally* FED. R. CIV. P. 12(b)(1).

The Court may dismiss for lack of subject matter jurisdiction on any one of the following: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts related to the subject matter jurisdiction issue. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981); *accord Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001).

A 12(b)(1) motion that challenges jurisdiction based on the face of the complaint is a "facial attack." *See Williamson*, 645 F.2d at 412. "A facial attack on the complaint requires the court merely to look and see if

5

plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980); *see Williamson*, 645 F.2d at 412 (when Rule 12(b)(1) motion presents a facial attack, "the plaintiff is left with safeguards similar to those retained" for Rule 12(b)(6) motions).

## ANALYSIS

**A. White's claims under 28 U.S.C. § 1983 must be dismissed.**

White sues Texas, Grapevine, and the Grapevine Defendants under 28 U.S.C. § 1983. For the Grapevine Defendants, White asserts § 1983 claims in both their official and individual capacities. *See generally* ECF No. 1. The Court addresses each claim below.

1. <u>Official-Capacity Claims Against the Grapevine Defendants.</u>

As noted in the FCR and Defendants' prior briefing, White's claims under 28 U.S.C. § 1983 against individual defendants in their official capacity must be dismissed because "[s]uits against state officials in their official capacity [] should be treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Plaintiffs may not use suits against a state agent in his or her "official capacity" as Trojan horses for claims against the underlying state entity. *See generally Ashe v. Corley*, 992 F.2d 540, 541 & n.1 (5th Cir. 1993). White acknowledges "Plaintiff is suing in both individual capacity and official capacity" for the Grapevine Defendants. ECF No. 63 at 27. Because White fails to meaningfully distinguish the Complaint's "official capacity" claims from the same claims against the State, his official-capacity claims must be **DISMISSED with prejudice**. *See Corley*, 992 F.2d at 541 & n.1; *see generally Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (explicating the critical distinction between official-capacity and personal-capacity claims under § 1983).

White's objection to the FCR offers to "correct the complaint if the court prefers" by "remov[ing] the checkbox's [sic] and keep[ing] the city and/or the state as defendants." ECF No. 63 at 4. But as explained below, White's claims against Grapevine and Texas fail as a matter of law, so the Court must decline this invitation.

6

2. Individual-Capacity Claims Against the Grapevine Defendants.

While White can't sue the Grapevine Defendants in their official capacities for the same allegations he asserts against Grapevine, he is certainly allowed to sue the Grapevine Defendants if they individually violated his civil liberties. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436, U.S. 658, 690 (1978) ("Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the body's officers."). Here, White's claims fail for two reasons. *First*, the Grapevine Defendants are immune from White's personal-capacity claims because the challenged actions were discretionary. *See* ECF No. 61 at 5–9. *Second*, even if the Grapevine Defendants weren't immune from White's lawsuit, White fails to plead sufficient facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

To state a viable personal-capacity claim, White "must plead that each Government-official defendant, through his own individual actions, has violated the Constitution." *Id.* at 663. He doesn't. Indeed, even the most meticulous review of White's Complaint fails to unearth sufficient facts, unique to each defendant, to support a legally cognizable claim against the Grapevine Defendants in their individual capacities. Because "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements," the Court conducted a careful review of White's allegations in a way that was "context specific" and called for "experience and common sense." *See Iqbal*, 556 U.S. at 663–64. Here, the Complaint's allegations are almost exclusively regurgitated elements of various causes of action, devoid of the "who, what, when, why, and how" necessary to state a viable claim.[2] In the

---

[2] *See, e.g.*, ECF No. 1 at 13 ("The City Manager had the power to provide due process or to remove the library trespass warning . . . and failed to do so. He is liable in his official and individual capacity."); 13 ("The Mayor and City Council were requested to remove the library trespass warning or provide due

7

absence of non-conclusory allegations against the Grapevine Defendants in their official capacities, *see* ECF No. 1 at 2–4, White's claims must be dismissed.

But even if White's claims were legally cognizable based upon factual assertions in the Complaint, the Court would still lack subject-matter jurisdiction over White's lawsuit because the Grapevine Defendants are entitled to qualified immunity against White's claims. The Court adopts the FCR's analysis on this point in its entirety. *See* ECF No. 61 at 5–9. White's objections to the FCR only meaningfully contest the magistrate judge's finding that the relevant actions were discretionary. *See* ECF No. 63 at 14. The Court disagrees. As the FCR explained:

> First, White argues that the Individual Defendants cannot raise the defense of qualified immunity because they failed to show that their actions were discretionary. (Pl.'s Grapevine Resp. at 4). As discussed above, once a defendant pleads a good-faith entitlement to qualified immunity, "the burden shifts to the plaintiff." *Hathaway*, 507 F.3d at 319. The Court finds that the Individual Defendants plead and, thus, have properly raised qualified immunity. Assuming, for argument's sake, that the Individual Defendants were required to do more to raise qualified immunity, they did so. The Court finds, and White raised no arguments to rebut, that all of the section 1983 claims against the Individual Defendants are for actions they allegedly took as city employees. (*See generally* Complaint). White does, however, argue that those actions were not discretionary. (Pl.'s Grapevine Resp. at 4-5 (stating that "[c]learly it is not a discretionary action to commit fraud, false imprisonment, violation of federal due process, etc.")). Merriam-Webster defines "discretionary"

---

process and failed to act . . . . They are liable in their official and individual capacity."); 14 ("The library director and the City of Grapevine did violate Plaintiff's Substantive due process rights by issuing criminal trespass warnings for using only his fundamental rights."); 14 ("The library trespass warning violated Plaintiff's Equal protection rights. Plaintiff brings this as a class-of-one claim."); 15 ("The Library Director acted after [Plaintiff's persistent emails to various city officials] by issuing a criminal trespass warning. This is retaliation from City Management and the Library director . . . [and] City Management and the Library Director are liable in both official and individual capacities."); 18 ("The library director issued a trespass warning without just cause, which did violate plaintiff's right of locomotion.").

> as an action "left to individual choice or judgment." *Discretionary*, The Merriam-Webster Dictionary (Revised ed. 2022). Thus, a discretionary action is any action in which the actor has a choice regarding if or how to carry it out. For example, a Parks/Rec director has the discretion to issue a trespass warning because he can choose to issue the warning and he can choose not to issue the warning. While it is possible that a court could subsequently find that the issuance of a trespass warning was improper, it was still a discretionary action. Accordingly, the Court finds that the Individual Defendants have properly raised qualified immunity.

ECF No. 61 at 7. White's objection pushes back against the FCR, arguing that "the Magistrate cites a non-legal dictionary (Merriam-Webster) for the legal references instead of court rulings and precedent, which does not bring high confidence." ECF No. 63 at 14. But the Court agrees with the FCR that the crux of White's allegations centers on discretionary functions. To the extent White has concerns over the use of Merriam-Webster's dictionary, the Court notes that the preeminent legal dictionary defines "discretionary" in essentially identical terms. *See Discretionary*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("involving an exercise of judgment and choice").

Still, White objects that he "brings causes of action for abuse of process, defamation, false imprisonment, fraud on the court, etc.," none of which the Grapevine Defendants had "discretion" to commit. *See* ECF No. 63 at 14. But the Court doesn't base its analysis upon legal labels in the Complaint, but upon the facts underlying White's claims. The FCR explained this in substantial detail. *See* ECF No. 61 at 7. White is thus incorrect when he says the FCR declared "any action a government employee takes is discretionary." ECF No. 63 at 14. The FCR never takes that approach, but instead explains what precisely renders a state official's action "discretionary."

The FCR also notes that "[i]n a last-ditch effort to save his Section 1983 claims, White argues that 'declaratory and injunctive relief is sought and qualified immunity is not a defense.'" ECF No. 61 at 9. But the FCR collects cases in noting "his argument falls flat because Section 1983 does not permit injunctive relief against state officials sued in their ***individual capacities***." *Id*. The Court agrees.

Because the Grapevine Defendants actions vis-à-vis the peace bond and trespass warning were discretionary, White's claims are precluded as a matter of law—whether or not the Court agrees that the actions were proper. *See Anderson v. Creighton*, 483 U.S. 635, 639 (1987). Accordingly, White's § 1983 claims against the Grapevine Defendants in their official capacities are **DISMISSED with prejudice**.

3. <u>Claims Against the City of Grapevine.</u>

Leaving the individual Grapevine Defendants behind, White also asserts a § 1983 claim against the City of Grapevine. The Court endorses the FCR's analysis on this point as well. *See* ECF No. 61 at 10–13.

"Municipal liability under Section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom." *Self v. Mansfield*, 369 F. Supp. 3d 684, 700 (N.D. Tex. 2019) (quoting *Piotrowski v. Hous.*, 237 F.3d 567, 578 (5th Cir. 2001)). Plaintiffs must establish all three elements to state a viable claim against the relevant municipality. *Id.* And a municipality may be liable under § 1983 only if the execution of one of its customs or policies deprives a plaintiff of his constitutional rights. *Monell*, 436 U.S. at 691. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Further, "even a facially innocuous policy will support liability if it was promulgated with deliberate indifference to the known or obvious consequences that constitutional violations would result." *Piotrowski*, 237 F.3d at 579 (citation omitted).

At the end of the day, as the FCR rightly noted, "[a] city cannot be liable under Section 1983, however, merely because it employed a tortfeasor." ECF No. 61 at 11 (collecting cases). Rather, "[t]he 'official policy' requirement . . . make[s] [it] clear that municipality liability is limited to action for which the municipality is actually responsible . . . that is, acts which the municipality has officially sanctioned or ordered." *Pembaur v. Cincinnati*, 475 U.S. 469, 479–80 (1986). Put differently, the policy or custom must be "the moving force of the constitutional violation." *Monell*, 436 U.S. at 694. The Complaint wholly fails to

10

establish this required showing. Indeed, as White alleges:

> The claims brought in this complaint have been brought to the attention of the Mayor and City Council before the complaint was filed. The Mayor and City Council then ratified the decisions. Thus, we see that the policy makers were involved and that the municipality is liable . . . . We see there was a city policy (ratified by policy makers), there was a violation of many civil rights, and the cause of these violations was due to the policy makers from the city.

ECF No. 49 at 7. Further, White asserts that the city policy led to the "violation of procedural due process, violation of substantive due process, violation of free speech, violation of right of locomotion, violation of freedom of association, equal protection violation, etc." *Id.* at 6. But this conclusory statement can't adequately substitute for factual allegations. Moreover, the pleadings never identify what the relevant city policy was. *See* ECF No. 61 at 12.

So all we know from the pleadings is that various officials within Grapevine's municipal government signed off on the peace bond and trespass warnings that White contests; we don't know what underlying city policy allegedly deprived White of a civil liberty. The Complaint's silence on this point cannot be overcome. Nevertheless, construing White's pleadings "as liberally as possible," the magistrate judge concluded "that White is attempting to assert that it was Grapevine's city policy to usurp his rights by issuing trespass warnings without the opportunity for a hearing." *Id.* That's about the best the Court can do given the paucity of non-conclusory allegations in White's Complaint. *See* ECF No. 1. In this regard, White's objections fail to indicate any fault in the FCR's reasoning, which the Court adopts:

> White's allegations fail to allege "even a facially innocuous policy [that] was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." *Piotrowski*, 237 F.3d at 579 (internal citations omitted). As discussed above, White complains that he was issued trespass warnings without a hearing and, thus, in violation of his rights. A trespass warning is a predicate to the issuance of a charge of criminal trespass under section 30.05, and can be given by the owner of the property or anyone acting on their behalf, such as an attorney, police officer, neighbor, or employee.

11

>*See* Texas Penal Code § 30.05. While only one warning is required for a party to subsequently seek a charge of criminal trespass, there is no limit to the number of warnings that can be issued. *Id*. Because White has not pled that he has been prosecuted for criminal trespass under section 30.05, only that he has been given trespass warnings, no hearing was required, and, thus, he cannot show that the policy was promulgated with a deliberate indifference that a constitutional violation would result. *See Smith v. Machorro*, No. 3-07-cv-1547-BD, 2008 WL 656500, at *4 (N.D. Tex. Mar. 12, 2008) (finding that the plaintiffs were never placed under arrest when they were issued a criminal trespass warning, thus due process is not triggered); *see also Shaikh v. Allen City Council*, No. 4:21-CV-953-ALM-KPJ, 2023 WL 2518908, at *10 (E.D. Tex. Feb. 8, 2023), rep. and recommendation adopted, No. 4:21-CV-953-ALM-KPJ, 2023 WL 2503542 (E.D. Tex. Mar. 13, 2023) (citing *Bhombal v. Irving Indep. Sch. Dist.*, No. 3:17-cv-2583, 2018 WL 2127760, at *3 (N.D. Tex. May 9, 2018)). Had White been prosecuted for criminal trespass and pled that Grapevine had an official policy of violating due process through the prosecution of offenders—not just White himself—for criminal trespass without a hearing, his claims possibly could have survived. However, based on White's pleadings, that is not the case here.

Because the Complaint identifies no policy or custom that was a "moving force" behind any constitutional violation, White's § 1983 claims against Grapevine are **DISMISSED with prejudice**.

### B. White's tort claims must be dismissed.

Turning next to White's tort claims, White alleges an array of tortious conduct on the part of both the Grapevine Defendants and the City as a whole. *See, e.g.*, ECF No. 1 at 33–34 ("Defimation [sic] and common law fraud"), 34 ("Intentional Inflection [sic] of emotional/mental distress"), 42 ("false imprisonment"), 44 ("civil conspiracy"). For the most part, White's pleading regurgitate the elements of each cause of action and rely upon conclusory assertions of fact instead of substantive assertions of fact. *See id*. But the Court need not parse his 60+ tort claims for each defendant because the claims independently fail as a matter of law. The Court addresses his claims against the city first.

1. Tort Claims Against the City of Grapevine.

State entities like the City of Grapevine enjoy sovereign immunity from lawsuits unless such immunity has been waived. Relevant here, the Texas Tort Claims Act ("TTCA") provides a limited waiver of immunity for certain tort actions against the State. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.023; *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008). But dismissal is warranted here for one simple reason: White's claims against Grapevine all sound in intentional tort (a fact White doesn't dispute). *See* ECF Nos. 1; 47 at 7 ("[c]learly plaintiff brings state claims . . . for intentional torts"). White's objections didn't address this point, which kills his tort claims against Grapevine. *See* ECF No. 63; *see also Goodman v. Harris Cnty.*, 571 F.3d 388, 394 (5th Cir. 2009) ("[T]he TTCA does not apply to claims arising out of an intentional tort.") (collecting cases). The Court thus adopts the FCR's reasoning on this point (*see* ECF No. 61 at 15–16) and concludes that White's tort claims against Grapevine must be **DISMISSED with prejudice**.

2. Tort Claims Against the Grapevine Defendants.

Turning next to White's tort claims against the Grapevine Defendants, the Complaint asserts twenty-two distinct tort claims against the Grapevine Defendants based upon the same underlying facts as his tort claims against Grapevine. *See* ECF No. 1. Applying the TTCA once more, Texas law is clear that when a plaintiff sues a governmental entity and its agents in tort, Section 101.106(e) mandates dismissal of the claims against the constituent employees. *See Univ. of Tex. Health Science Ctr. at Hous. v. Rios*, 542 S.W.3d 530, 537 (Tex. 2017); *see generally* Tex. Civ. Prac. & Rem. Code Ann. § 101.106(e) ("If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit."). In doing so, the TTCA requires plaintiffs like White to choose between suing a governmental unit and suing an employee of that unit. *See Bustos v. Martini Club, Inc.*, 599 F.3d 458, 462 (5th Cir. 2010).

While White insists "[g]overnmental immunity is not relevant to the state law claims [because] plaintiff does not bring those claims against the city, only the individuals," *see* ECF No. 47 at 7, this argument relies on formal recitations in the pleadings (*i.e.*, the defendants named for each count), not the substantive facts underlying each claim (*i.e.*, the allegations in support of each count). The Court looks to the relevant conduct, not the titles attached to causes of action in the Complaint. *See Goodman*, 571 F.3d at 394 ("Also excluded from the TTCA are allegations against a governmental unity arising out of the same conduct that formed the basis of the intentional tort claims against its employee."). Because White's intentional tort claims "arise out of the same conduct" as his claims against the city, the Court finds White's objections unavailing.

Citing *Baskin v. Parker*, 602 F.2d 1205 (5th Cir. 1979), White contends "the remedies sought from these state claims need not be consistent with state law." ECF No. 47 at 8. Put differently, even if the TTCA bars White's tort claims against the Grapevine Defendants, the Court should nevertheless allow the claims to move forward because Texas law doesn't provide an adequate remedy for White's alleged injuries. *See id.* But *Baskin* was merely noting that state remedies may often be brought concurrently with federal civil-rights claims "when the federal remedies 'are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against the law.'" *Baskin*, 602 F.2d at 1208 (citing 42 U.S.C. § 1988). The *Baskin* Court went on to observe that:

> Using the varying contours of local law to define the reach of a federal statutory right of action would make the availability of vicarious liability depend upon the location and, in some states, the nature of the tort. These incidental, irrelevant vagaries should not mold the contours of this national constitutional tort. Adopting each state's law into § 1983 would create a Lex loci doctrine of respondeat superior granted or withheld, on the basis of state rather than federal policy.

*Id.* That case thus implicates, if anything, White's § 1983 claims. But a case involving search warrants obtained without probable cause can't be

14

said to override the TCCA vis-à-vis White's simple tort claims, and the Court finds no precedent whatsoever interpreting *Baskin* as eliminating the TCCA's applicability. Because White's claims are thus precluded by law, White's tort claims against the Grapevine Defendants must be **DISMISSED with prejudice**.

### C. White claims against Texas must be dismissed.

Having addressed White's claims against Grapevine and the Grapevine Defendants, the Court next turns to White's claims against Texas. While the pleadings do no favors in determining what White's theories of liability are vis-à-vis the State, his claims can be bunched into three categories: civil-rights claims under 28 U.S.C. § 1983, tort claims under the TTCA, and constitutional challenges under the Texas constitution. The Court groups the first two categories (civil-rights claims and tort claims) because Texas is immune from suit with respect to those claims. For White's constitutional challenges, as explained further below, the Court can liberally construe a viable claim, but nevertheless declines to exercise supplemental jurisdiction over that claim in the absence of an independently viable anchor claim to establish this Court's jurisdiction.

1. <u>Texas is immune from White's civil-rights and tort claims.</u>

White alleges numerous civil-rights and tort claims against the State of Texas. For these claims, the Court is persuaded by the arguments in Texas's Motion, *see* ECF No. 46, and incorporates its above analysis vis-à-vis Grapevine and the Grapevine Defendants. There's no need to repeat much of that analysis here. For the § 1983 claims, the Court's position cannot be stated better than in Texas's Motion: "Critically, absent a state waiver or congressional override—which White makes no effort to establish—a 'State cannot be sued directly in its own name regardless of the relief sought.'" *See* ECF No. 46 at 6 (quoting *Graham*, 473 U.S. at 167 n.14. As explained in the FCR and Texas's Motion, White cannot lean upon the *Ex Parte Young* doctrine to circumvent this preclusion. *See id.* at 6–8. Accordingly, White's civil-rights claims against Texas must be **DISMISSED with prejudice**. Similarly, because "[a] state does not waive Eleventh Amendment immunity in

15

federal courts merely by waiving sovereign immunity in its own courts," *see Sherwinski v. Peterson*, 98 F.3d 849, 851–52 (5th Cir. 1996), White's TTCA claims must also be **DISMISSED with prejudice**.

2. <u>The Court declines to exercise supplemental jurisdiction over White's claims under the Texas Constitution.</u>

Construing the pleadings liberally and interpreting them in White's favor, a sole category of claims survives dismissal due to insufficient pleadings and/or want of jurisdiction: White's state-constitutional claims against Texas. While the contours of these claims aren't clear, the FCR is right that "it appears that White may be able to seek equitable relief against Grapevine [and the State] for violations of the Equal Protection Clause of the Texas Constitution." ECF No. 61 at 18. The Court accepts this invitation to abstain. *See Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009) ("The general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial."). Accordingly, White's claims under the Texas Constitution are **DISMISSED without prejudice**.

Here, the Court notes that Texas's state courts are more than capable of handling White's claim. While the Court is disinclined to exercise supplemental jurisdiction over his constitutional challenges in the absence of a live federal claim, White is not without recourse. On the contrary, he can take his claims sounding in Texas's state constitution to Texas's state courts. But without speaking to the merits of those claims, this Court will not exercise supplemental jurisdiction over them without a separate federal claim making such jurisdiction appropriate and advisable.

## CONCLUSION

For the above reasons, the Court **DISMISSES** White's civil-rights and tort claims, along with his corresponding requests for declaratory and injunctive relief, **with prejudice**. But the Court declines to exercise supplemental jurisdiction over White's remaining plausible claims for equitable relief under the Texas Constitution because those claims would not be anchored to any other claim appropriate in this federal

forum. Accordingly, the Court **DISMISSES** White's claims under the Texas Constitution **without prejudice**. All outstanding motions filed in this action (ECF Nos. 62, 64, 65, 69, and 71) are hereby **DENIED** as **moot**.

**SO ORDERED** on this **21st day of November 2023.**

_____
Mark T. Pittman
UNITED STATED DISTRICT JUDGE